Case number 226012, Jane Doe v. University of Kentucky. Oral argument not to exceed 15 minutes per side. Ms. Correa for the appellant. Good morning. Good morning. I'm Linda Correa and I represent Jane Doe in this case. May it please the court, I'd like to reserve five minutes of my time. Very well. Your Honor, this is a straightforward case of retaliation in violation of Title IX and compelling binding precedent of the Supreme Court in Jackson and Burlington Northern requires reversal and remand for trial. First, under Jackson, when a federal funding recipient retaliates against a person because she filed a complaint for sex discrimination, that is a violation of Title IX. Second, Jane Doe has presented compelling evidence of material adverse actions by the university that might dissuade a reasonable person from filing a lawsuit. And when that evidence is assessed under the Burlington standard, that information, that evidence should be also considered in a jury trial. And third, the court below ruled too narrowly that the sexual misconduct hearing process under UK's policy was not a school-related activity. And so for those three reasons, we're asking the court to remand for trial. Now, this is a case in which Jane Doe was sexually assaulted in her dorm on October 2nd, 2014. She was in her first year of college and for that entire year she had three botched hearings that were hanging over her while she tried to complete her studies. And at the end of that... Procedural problems in those first three hearings were somehow retaliatory? No, we haven't alleged that, Your Honor. But the point is that after she was, she had identified that that process was interfering with her ability to complete her studies at the university. And so she filed suit at the beginning of her second year of college saying that she was having trouble under Title IX completing her studies because of that botched process. And what followed is why we're here. And what followed is something to be considered by a jury. Would a reasonable person in Jane Doe's circumstances have filed a federal lawsuit if she knew that after that the chief of police of the university would interfere with an important witness? That school officials with knowledge of that alleged interference would do nothing and would in fact conceal it from her going forward? That they would intentionally delay their internal proceedings for more than a  year because of the lawsuit and they testified that the delay was because of the pending lawsuit in federal court. And that in that what should have been her third year of college the proceedings still hadn't been completed internally. And after that in the fourth hearing they accused her of having an improper motive for filing a federal lawsuit as part of that internal process. And they said they were asking the questions because she filed that federal lawsuit. And then the dean of students who was charged with prosecuting the best case on her behalf in that fourth hearing didn't put on the best case. He didn't object to improper questions. He didn't make sure that key witnesses testified. He didn't object when improper questions were asked about her federal lawsuit. And on and on. And so for all of these reasons we believe that a jury considering these facts could take the view that a reasonable person in her position would have viewed all of those actions as materially adverse and would have dissuaded her from or a reasonable person from filing a lawsuit in federal court. Is the decision from the appeals board from the fourth hearing part of the evidence that you use in your retaliation claim? The appealing the fourth hearing I'm sorry I missed that. There are lots of hearings and lots of appeals so it gets confusing. My understanding is that after the fourth hearing that Jane Doe and the university appealed and that the appeals board upheld the hearing panel's determination and I'm asking if that appeals board determination is part of your retaliation claim. It is. And part of the reason is that Jane Doe appealed. The university responded in a way that was adverse to Jane Doe and defensive to the university. The university's position in that appeal did not take up her cause and advocate for for her position that the decision should be reversed.  the the Title IX coordinator, the dean of students, general counsel and even Mr. Bowman at counsel's table here together crafted the response by the university and faulted her for her activity in the hearing and so those decisions that behavior is part of this case. You say that your remedy is to reverse and remand for trial. It's my understanding that the the district court granted summary judgment on the prima facie stage of the claim, is that right? And it didn't go any farther than the prima facie stage? Your Honor, this was a summary judgment motion. The court found that Jane Doe could not meet the prima facie. If we reverse that, on remand, the district court theoretically could assess the second and third prongs. Could it not? Whether there's a non-discriminatory reason and whether there's pretextual reasons at least theoretically. Your Honor, this is de novo review and the court said in a very offhand way that Jane Doe could not meet the standard because she because it applied the wrong standard. So with the right direction the court below could have a trial identifying the way in which a jury could assess whether the evidence that she has presented is evidence of pretext for the purposes of Title IX. Your Honor, the further questions that were raised by the appellee I'm happy to address. But the issue really here from the Supreme Court under Jackson goes to whether the behavior was behavior by the the education institution. And here we have individuals at the highest levels of the university, the dean of students, the chief of police, the Title IX coordinator, the general counsel, all who were acting on behalf of the university with authority from the university as the hearing process proceeded and they were not acting in her interest and a jury could determine from their conduct that their behavior toward her would cause or might cause a reasonable person in her position to be dissuaded from filing a federal lawsuit. Okay, also this is the second time the case has come up here. Yes it is. The first time it was decided the issue was standing, was it not? Yes. Okay. Does our previous ruling in that prior case have any effect on this case? I think it does because there really isn't a way to distinguish retaliation from sex discrimination under Title IX based on Jackson. Jackson said that retaliation against a person who files a complaint for sex discrimination is discrimination and so where this court has already ruled that Jane Doe can bring a claim for sex discrimination for all the reasons that it cited and the reasons that the university had put forward that were rejected, that same claim for discrimination, for retaliation, which is discrimination under the plain terms of the statute according to the Supreme Court should go forward and that case is binding here. We never imagined that we would be back here because this court has already decided that. I guess one of the concerns that I have in trying to go through all of this is it's certainly the case that all of these various things that you're describing occurred but my concern is trying to discern from all of this how do we tell that the things that you complain of now as being retaliatory were in fact retaliatory. They were certainly adverse but what if the things that you're complaining about were actually as a matter of evidence for example perfectly proper? They hurt her but they may not have been retaliatory and I've been trying to figure out what exactly is the retaliation here? Jackson answers that question, your honor, and Jackson says that retaliation is conduct that is conduct because someone filed a claim of sex discrimination. None of this would have happened at all had she not filed the claim because we wouldn't have had all of these various hearings but the various acts, what I'm worried about is the various acts that you complain of, actions that you complain of. All of them are related to all of this but how are they retaliatory? How are they because she did this and they're going to get back at her? So there are no questions about Jane Doe's credibility or her motive in the first three hearings. After she files the lawsuit the questions are very pointed and direct and the hearing officer asks her specifically isn't it true that you filed a federal court lawsuit against the University of Kentucky for monetary damages related to your claim of having been assaulted by the assailant while living on campus? Are you concerned that the assailant is not found, if the assailant is not found responsible in this proceeding it would not or it could have a negative effect on your lawsuit? Those are explicitly asked in that context only because she filed the  lawsuit and the Jackson court found that actions like this that are because someone filed a claim of sex discrimination are easily attributable to the funding recipient and they're always by definition intentional and that's retaliation and a jury can decide whether a reasonable person in her position would have been dissuaded by filing that lawsuit if she knew in advance that she was going to be grilled on that in the hearing that is just designed to decide whether the assailant should be held responsible. Isn't that the strongest answer? It's an issue of fact whether they did this on the basis of retaliation or whether they were just following procedures? Yes and the problem here is that the district court took the inference in favor of the university on that. At the primary stage. They accepted their response that this was innocent and that's for a jury to determine. Isn't also a problem that I read the district court's opinion that the district court didn't even consider all of these things that you're talking about because the district court limited its analysis to these three paragraphs in the complaint rather than incorporating well quite frankly all of the evidence that comes in through summary judgment, the depositions and things like that and so by limiting the focus that way we don't even have at this point a full analysis even of the prima facie case. Well this is de novo review your honor and so the information is there and available just to show whether there is sufficient evidence on Jane Doe's side to to show that there were material actions materially adverse actions that might have dissuaded her and if that's the case there isn't an absence of evidence here so that question can be answered and there is plenty of evidence and that could be addressed by a jury. Alright counsel you're out of time you can use your evidence rebuttal now or you can save it. I'll save it, thank you your honor. Good morning. Good morning, may it please the court, Mr. Correa, Brian Bowman for the university. The decision of the district court should be affirmed because the plaintiff's claims goes beyond the limits of what courts have set as the implied private right of action under Title IX. There are three important principles that I think really control this case to focus on today. First, an institution under a Title IX claim is only liable for its own actions. There's no respondeat superior liability, there's no cat's paw theory liability as this court made clear in Bowes. It's only liable for its own official conduct. Second, in the context of a sexual harassment claim, which is how this case started, a university in this context would only be liable if it's deliberately indifferent to a report of sexual harassment and then there's a subsequent act of harassment as this court has made clear in Kalarich. And then third and finally, unlike a sexual harassment claim, an institution is not liable for being deliberately indifferent to retaliation. Now there may come a day when this court or a higher court addresses immunity for Title IX retaliation or what the proper burden shifting is, but I think I can see from the tenor of the court this morning questions about the McDonnell Douglas burden shifting and how that was applied or not applied. If I can address one thing I heard earlier that's, well two things actually, that they're not correct. Ms. Doe is never a student at the University of Kentucky. The prior case makes that clear. There is an arrangement between a local community college and the university that students at Blue Grass Community College... Counsel, are you just rehashing the standing question? No, no your honor. The point was made earlier that Ms. Doe was attempting to be a University of Kentucky student her second and third year. That's not correct. She was never a UK student. In the other comment earlier... Why does it matter? Title IX says person. Well you have to be a participant in an educational program or activity. She was, wasn't she? She was at the time she lived in the dorm but she left within a week. But this is a process that started while she was whatever that phrase was, not a student but a participant in a Title IX activity and it's a continuation, isn't it? It is but I think that's where there's an important distinction because the protected activity that the plaintiff is relying on here is the filing of this lawsuit which occurs over a year after she's no longer a participant. How do you distinguish Schneider Hill? We say you know a fifteen-year-old or teenager who goes to summer wrestling camp just once can bring a case. We have defined program or activity quite broadly in Schneider Hill as far as I read the case. Right, and so if that provides her coverage under the statute, you still have to look to what was the university action that was taken against her. And the comments I heard earlier, and there may have been a question or two from the bench, was about questions asked of her. And to be clear those questions were asked on cross-examination. They were not questions posed by the university. Now the hearing process at the time allowed the accused, the respondent's attorney to submit questions in advance and the hearing officer screened them. So when I hear a comment that says the university questioned her, that's not really accurate. It was questions posed on cross-examination by the respondent's attorney. Ms. Doe's attorney at the hearing objected to those questions and Professor Lawson, who's the hearing officer, makes the relevancy determination about those. So those can't rise to the level of being sufficiently severe to dissuade someone when you're being asked clearly relevant questions that the Constitution is going to permit. Did those issues come up on the appeal before the appeals board about whether that was? It did. And did the university take the position that it was error to allow those questions or that it was okay to allow those questions? So at the university at the fourth appeal, and there was another comment that said the university didn't support Ms. Doe, that's also not fully accurate. There were three issues that Ms. Doe raised on appeal of the fourth hearing. Two were critical of the university's presentation of the case. And so obviously the university's, the presenter who did that did not agree with that. But the third was the standard of clearly erroneous. And the university... Can I actually, just on the point that you were talking about, I want to clarify, you said that it wasn't the university who asked the questions about her motives and questioning her motives. And my question was, did she bring that up in the appeal and then the university, my understanding, submitted a separate brief in the appeal and did they agree with her or disagree with her that those questions were appropriate? Or maybe that wasn't addressed at all. But that's what I'm trying... They didn't address the propriety. What they did say was that Professor Lawson's relevancy rulings were within his decision to make. So they said that that was fine? Yes. But the third error that Ms. Doe alleged on that fourth appeal was the outcome. And the university did write in support of her on this. There were three points in the appeal and it was mixed through that. But as far as... When you say the university supported her on that outcome field, what are you pointing to specifically? So the brief is filed by the university complainant, who at that time is a gentleman by the name of Nicholas Kerwald. And what... And I've just pulled the conclusion from his brief on appeal. So you have Ms. Doe's brief on appeal, the respondent's brief on appeal, which obviously is seeking to affirm the hearing panel's decision. And then Mr. Kerwald responds. What are you referring to by... when you say that his brief on appeal? Well, maybe I'm being... In the form of a letter, right? Yes, maybe calling it a brief is too formal. Well, I'm just trying to make sure I know what you're talking about. So are you talking about the letter on... February 7, 2017, response to the January 31, 2017 appeal by Jane Doe? Is that what you're... Yes, it's the university's complainant's response to Jane Doe appeal. That's Exhibit 26 to our motion for summary judgment. And of course all this was filed under seal below because it is not redacted by names. And so he addresses that in really the page six over into page seven of his response to that appeal, touches on that issue. But again, in the conclusion, the strategic decisions made by him, which were again unchallenged at the time by Ms. Doe or her attorney, did not infringe upon her rights. But he agrees that the hearing panel's finding in their decision merits consideration and addresses facts that he was concerned about, were not supported by the record that he thought were favorable to her. So you have... Did the appeals board then consider that? They did in that issue, Your Honor, and that is all Exhibit 22 to the summary. It's a pretty lengthy decision that they did. And they concluded that they didn't have a problem with the things that he was saying were clearly erroneous in the panel's determination. They felt, the appeals, excuse me, the appeals board felt that the hearing panel's decision was based on the evidence that they heard. This case, like I think all these sexual misconduct cases that have gone through all these universities, is very much a decision of credibility. And the hearing panel's report noted a number of issues where they felt that Ms. Doe's testimony was inconsistent with what some of the record evidence was, including some of the video surveillance from the dorm lobby, some texts that she had sent to the respondents. So the hearing panel notes all those things. The appeals board also addresses all of those things. But if we come to the retaliation, this starts with the scheduling of the hearing. And the university asked in June of 15 for dates and offered some dates in July, and Ms. Doe was unavailable. And the university wrote again in July asking for dates in August. And Ms. Doe... Didn't the university delay scheduling the fourth hearing for 15 months? I don't think that's accurate, Your Honor, because... Didn't they actually admit that they didn't schedule the hearing because she filed the federal lawsuit? No, Your Honor. I thought they thought that the federal lawsuit precluded them from holding a fourth hearing. Am I wrong about that? So, you have the letter coming first from Ms. Doe's counsel on August the 10th that says we certainly object to the fourth hearing, but we understand you wish to go forward and we'll provide you dates when we have her schedule. And then there's a follow-up conversation, and then the lawsuit comes, and within a  there's a separate unrelated lawsuit by a different accused male that comes with a motion for a temporary restraining order and preliminary injunction. And in this suit there's... Within the first complaint, they are also seeking injunctive relief. And so, there is a TRO hearing in front of Judge Hood on the other case, and we were present, and I attempted to consolidate the cases because what was clear to the University... Okay, to answer my question, you did delay it 15 months because she filed the federal lawsuit? You say it was required because of the TRO requested? No, Your Honor, it was not 15 months. Okay, can you move along? I mean, I actually know all that, those facts, but... So then, that happens in October, and so then in January, they are again asking for dates. So at best, there's a time gap between October and January, between when the lawsuit was filed, you have the competing lawsuits with TRO, and then another ask in January of when the fourth hearing should be scheduled. But beyond that... Can you point to me where in the record that the reason for not scheduling this hearing for Jane Doe in this case was because of the other lawsuit? Who testified to that, and where can I find it? Well, I think it's in the record that's in the record below. So there was an initial motion to dismiss that was... Yeah, I'm just asking, I mean, and I'll search for it, of course, but somebody testified, like, oh, we didn't schedule her hearing because of the other lawsuit, not because of this lawsuit, but because of the other lawsuit. Who testified to that? So that would have been within, I think, Your Honor, I think it's in the Title IX coordinator's deposition, Martha Alexander, and what she said was we were waiting on the outcome of the case. And I think there's a fundamental difference when you react to the actual filing of the lawsuit versus what the court's ruling is going to be. And so at that point we had the TRO hearing or preliminary injunction hearing before the district court on the other suit at the same time that this one was pending. And then as soon as it was obvious that this case was not going forward on that same track and we had the room from the court, there was an immediate ask for a new hearing date. Alright, the other issue of alleged retaliation that I'm very concerned with is the the actions of the police officer of keeping Officer Sizemore from testifying. Why isn't that retaliatory? Well, to start with, it doesn't even rise to that level. But even on the bare facts, that's not what happened. Well, okay, we're not debating facts right now, I don't think. So, well, if we go through the burden-shifting analysis, and we'll start with the first part, would this be sufficiently adverse? Officer Sizemore did not testify at two of the prior three hearings. Officer Sizemore, in her deposition... Alright, I mean, you're saying that basically wouldn't make a difference, I guess, huh? Even though he was the investigating officer and he concluded that Jane Doe's  were credible and he recommended that this action be taken against the student, student B. I mean, alright, so you've got that, you also have the football coach guy that testifies. Does he testify at the fourth hearing? No, that was a... it wasn't a football coach, it was a member of the police department who was a liaison with the athletics department. That's who the respondent called immediately after this started. He did not, that officer did not testify. His testimony was stipulated to. So he did not testify either. The university stipulated to it or did Jane Doe's counsel stipulate to it? So it was the respondent's counsel and the university complainant that entered into that stipulation. Okay, so Jane Doe's counsel didn't consent to that? They had already left the hearing because Miss Doe or her attorney stayed for the remainder of the hearing after her cross-examination included. That was the entirety of what she did. But I think we, you know, the district court did not proceed through the entire burden shifting because it doesn't, it reaches the first part of the prima facie case. Isn't the prima facie case relatively easy hurdle to get to? I mean, we have a lot of case law that says that. Well, even if so, I think it's telling that these facts don't get to that point. Well, I don't know, I mean, we don't... There aren't too many cases that I see on appeal that are decided at the prima facie case. I mean, normally the judges will go through the other two. Whether there's valid reasons and whether there's protectual arguments and this or that, this is a little unusual. And I know it can be done. And I would point you to the Gordon versus Traverse City school case. There's not many cases in the circuit that are Title IX retaliation cases. But in that case there were a number of different alleged retaliatory actions. I'm sorry, I'll just briefly finish this if I may. And so what the court there held was that some of the actions don't even pass the prima facie case. Because they weren't school-related actions, which is important here, and they weren't sufficiently adverse. Others they did find were school-related like discipline. Clearly that's going to be a school-related action. But on the second prong did not pass that. So I think there are prior panel decisions that do. Any further questions? Thank you for your time. Alright, five minutes rebuttal. Thank you, Your Honor. I'd like to answer the questions that were asked a couple of times about where the testimony was about the reason for the delay in the hearing. And the testimony from the Title IX coordinator of the University, Ms. Alexander, in a 30 v. 6 deposition was in answer to this question. Why was the fourth hearing not scheduled before September 1, 2016? And her answer is, I believe that it was because we were awaiting rulings from federal court. There was no reference to some other second case that they were waiting for. And in fact, that case was over in January of 2016 when it had been dismissed. That was never something that was argued below. And it only appeared for the first time in the appellee's brief here today. And to answer Judge Blumkatz's question, there is no testimony in the record below that that other case had anything to do with the delay. There were a lot of questions. I want to prioritize what the court is most concerned about. But there was a question about the about the University's position regarding hearing officer Lawson's rulings. And the University's position explicitly was that in the testimony below from the Dean of Students, who was the prosecutor, that the University's position is what Professor Lawson ruled. The Dean did not object at that time. Jane Doe's attorney did object. Nevertheless, the University criticized Jane Doe's participation or her attorney's failure to participate as part of that appeal process and was not there advocating on her behalf. The last point that I wanted to address is the question regarding the participation of Officer Sizemore. Boy, if a Chief of Police can interfere with witness testimony in Title IX hearings on campus... What's the best evidence that he actually interfered? The best evidence is Officer Sizemore's testimony. That hearing on Title IX that was to take place on January 10th of 2017 was noticed in December. No one asked Officer Sizemore to be prepared to testify on January 10th until January 9th. And when she was called in by the Chief about her availability for something tomorrow that she might have to go to and would she have child care issues, he did not explain what it was about. He didn't explain any other contexts. And he admits this because he was asked by the Title IX coordinator to give a timeline of what happened. And his rendition of his vague questions that he plotted Officer Sizemore through lines up with what she was asked. And so it didn't make any sense. There's no indication that he was trying to be helpful to make sure that the University could put on the best evidence of what Officer Sizemore observed. And when Ms. Alexander, the Title IX coordinator, learned that the first information that she had been given was false, that Officer Sizemore was not on FMLA leave, and I believe that information came from Chief Monroe, she didn't go back and question that. She criticized Jane Doe or her lawyer for not having some role in making sure that some other testimony was presented. Is your theory of liability so I understand that Officer Monroe's intent or his motives are imputed to the University or is it that the University and not investigating and dealing with it given the anonymous emails and what went on as a problem? Because we have case law, the Bea case and things about how supervisory liability works in this context and it's quite limited. It's not exactly imputing motive to the University. Under Jackson, the act of the school official is the act of the University. It is easily attributed to the University and it is by definition intentional. He testified that he knew about the lawsuit. His explanation for why she was what happened in the conversation the day before the hearing and not making sure that she was present doesn't make any sense. He was able to get Officer Scott there, the football liaison, and to miss training on the notice that they had. That wasn't a problem to get him there and then to stipulate to testimony that was really inconsequential that the football player called him and said there's a problem and he said supposedly go to the police station and that was it. That wasn't probative of anything. It was miles apart from the way Officer Sizemore could have testified. If the hearing panel had questions about Jane Doe's credibility, they would have had the opportunity to ask Officer Sizemore there because she was the responding officer who was first dispatched after the sexual assault and she was a witness to the shape that Jane Doe was in, shaking and upset having been sexually assaulted. And that testimony should have been part of the hearing. All right, thank you. Any further questions? No. All right. Thank you, counsel. The case will be submitted.